IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | Criminal No. AW-09-232 |
| | * | |
| MICHAEL HENSON, *et al.* | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending before the Court in this case are Defendant John A. Houston's Motion to Dismiss for Lack of Venue or in the Alternative, for Change in Venue (Doc. No. 74), Defendant Henson's Motion to Transfer Case on Venue Grounds (Doc. No. 68), Defendant Michael Henson's Motion to Sever Counts (Doc. No. 70), Defendant Houston's Motion to Suppress Evidence #1 (Doc. No. 71) and Defendant Houston's Corrected Motion to Suppress Evidence #1 (Doc. No. 75). The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motions. The issues have been briefed, and the Court held a hearing on these Motions on March 9, 2010. For the reasons stated more fully below, the Court will deny Defendant Houston's motion to dismiss for lack of venue, deny Defendant Houston's motions to transfer venue and sever counts, and will deny in part and reserve in part Defendant Houston's motions to suppress evidence.

    1.    <u>Defendant Michael Henson's Motion to Sever Counts</u>

Defendant Michael Henson moves to sever Counts I and II of the Indictment from Count III of the Indictment on the grounds that a) the allegations set forth in Count III are not sufficiently connected to the allegations set forth in Counts I and II as required under Federal Rule of Criminal Procedure 8(a); and joinder of Count III unfairly prejudices Henson's defense on Counts I and II, in

1

violation of Federal Rule of Criminal Procedure 14(a). The Government opposes this Motion, explaining that the charges were properly joined under Federal Rule of Criminal Procedure 8(a), and that Defendant Henson has not demonstrated any possible prejudice that would result from a joint trial. The Court agrees with the Government.

Federal Rule of Criminal Procedure 8(a) provides that joinder of offenses is appropriate where the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The Fourth Circuit requires only that "the joined offenses have a 'logical relationship' to one another." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005) (quoting United States v. Hirschfeld, 964 F.2d 318, 323 (4th Cir. 1992)), cert. denied, 547 U.S. 1061 (2006). Of course, joinder is "not infinitely elastic, and so cannot be stretched to cover offenses. . . . which are discrete and dissimilar." United States v. Hawkins, 589 F.3d 694, 701 (4th Cir. 2009) (citing United States v. Mackins 315 F.3d 399, 412 (4th Cir. 2003)).

The Court finds that there is a logical relationship between Henson's alleged involvement in a conspiracy to smuggle weapons and Henson's alleged false statements to federal law enforcement officers regarding those weapons. There is a clear connection between the two charges, as they both relate to the weapons. The government intends to show, as alleged in Count III, that Henson denied having ever seen the weapons seized by the Criminal Investigation Department ("CID"), when he actually recognized one of the weapons as his own personal firearm, and the others as John Houston's. The Court also finds that Count III is not merely an attempt by the Government to introduce otherwise inadmissible evidence.

Additionally, Defendant Henson has not shown that trial of Count III with Counts I and II will unfairly prejudice his defense, in violation of Federal Rule of Criminal Procedure 14. Under that

2

rule, "[i]f the joinder of offenses . . . appears to prejudice a defendant . . . , the court may order separate trials of counts." Fed. R. Crim. Pro. 14. Defendant Henson argues that because Count III is premised on the truth of Counts I and II, joinder of the Counts will unfairly prejudice him by allowing the jury to conclude that any defense to Counts I and II is inherently false, and by permitting the Government to present otherwise inadmissible "other bad acts" evidence. But, the Court believes that Defendant Henson underestimates the capacity of the jury to understand the nature of the relationship between the Counts. Moreover, the Court can give proper jury instructions to eliminate any risks that may exist. See United States v. Cardwell, 433 F. 3d 378, 387. Trying these Counts together will also avoid unnecessary burden to the court, government, and witnesses that would result from multiple trials. Thus, the Court will deny Defendant Henson's request to sever Count III from Counts I and II.

    2.    <u>Defendant John A. Houston's Motion to Dismiss for Lack of Venue or in the Alternative, for Change in Venue</u>

Defendant John A. Houston moves the Court to dismiss the case for lack of venue, or, in the alternative, to transfer to another more appropriate district. Defendant Houston argues that he was not actually in custody when he first arrived in the United States after his arrest in Iraq, and that consequently venue is not proper in the District of Maryland under 18 U.S.C. § 3238. He argues that in the alternative, regardless of whether venue is proper in Maryland under 18 U.S.C. § 3238, it is unconstitutional. The Government responds, and the Court agrees, that venue is proper in the District of Maryland because Defendant Houston was "first brought" into the United States when he arrived at the Andrews Air Force Base, accompanied by two agents of the Department of Defense Criminal Investigation Service ("DCIS"), at the order of Judge Connelly, after his arrest at Camp Victory Courthouse in Baghdad, Iraq. Nor does laying venue in the District of Maryland violate Defendant Houston's constitutional rights.

Consistent with constitutional venue principles in criminal cases, Congress may prescribe specific venue requirements in statutes that "must be honored (assuming, of course, that it satisfied the constitutional minima)." United States v. Johnson, 510 F.3d 521 (4th Cir. 2007) (citation omitted). In 18 U.S.C. § 3238, Congress prescribes special venue rules for "[o]ffenses not committed in any district," and provides:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

18 U.S.C. § 3238. As Defendant Houston acknowledges, "'[f]irst brought' within the context of the statute means first brought in custody with liberty restrained." United States v. Erdos, 474 F.2d 157, 161 (4th Cir. 1973).

It is undisputed that 18 U.S.C. § 3238 is applicable in this case as Defendant Houston was indicted for offenses not committed within any State. Additionally Defendant Houston concedes that he was arrested in Iraq on September 5, 2008. Thus, the question before the Court is whether Defendant Houston was "in custody with liberty restrained," when he arrived in Maryland. The Court finds that he was in custody when he arrived at Andrews Air Force Base in Maryland. The most significant indication that Defendant Houston was in custody when he arrived is that Judge Connelly ordered that as a condition of his release, Houston report to DCIS agents before his flight on Sunday, September 8, 2008, so that two agents could accompany him to the United States via pre-designated military air transportation. Indeed, in the release Order, Judge Connelly explicitly stated that Houston would remain "in custody (same conditions as previously set) of DCIS agents." (Doc. No. 74 Ex. B, 2.) Defendant Houston argues that though his liberty was constrained somewhat by

these two agents, he was not "in custody." The Court finds that in this case, where his arrival in the United States was ordered by a judge, and he was accompanied by two DCIS agents on a non-commercial flight and remained with them until he reported to the Judge who had ordered his return, his liberty was not merely restrained, but rather, he was actually in custody for the purposes of this statute. Indeed, the Court wonders whether Defendant Houston would maintain his insistence that he was not in custody if these two agents had questioned him and obtained an incriminating statement in violation of Miranda about the alleged offenses during the time they escorted the Defendant.

Additionally, the cases on which Defendant Houston relies underscore how different the instant case is from those where courts have found defendants were not in custody under 18 U.S.C. § 3238. Indeed, none of those cases involved defendants who had already been arrested and were accompanied by agents on non-commercial airlines. See United States v. Erdos, 474 F.2d 157, 161 (4th Cir. 1973) (defendant returned from overseas unaccompanied on commercial airline and was arrested for committing homicide overseas only after his return); United States v. Catino, 735 F.2d 718 (2d Cir. N.Y. 1984) (arrested upon arrival in United States after taking commercial flight, unaccompanied); United States v. Holmes, 2009 U.S. Dist. LEXIS 113525 (E.D. Va. Dec. 4, 2009) ("Defendant returned to the United States under no form of restraint or custody. Therefore, it cannot be said that Defendant was 'first brought' into the Eastern District of Virginia when he returned from his deployment in Qatar, regardless of whether the Air Force or the United States Attorney's Office intended to investigate . . .")

Additionally, the Court is not persuaded by Defendant Houston's argument that the Court should ignore the venue rules Congress established in 18 U.S.C. § 3238 for overseas crimes, and rather follow the Constitution's venue requirements for crimes committed within the United States. The Court understands that Defendant would prefer to defend this case in the district where he

resides, but the Court does not find it necessary or desirable in this case. Thus, the Court will deny Defendant Houston's Motion to Dismiss for Lack of Venue or in the Alternative, for Change in Venue.

    3.    <u>Defendant Michael Henson's Motion to Transfer Case on Venue Grounds</u>

Defendant Henson moves the Court to transfer the case to the United States District Court for the Eastern District of North Carolina. Defendant argues that transfer of venue is necessary because as to Count Three, the interaction between Defendant Henson and the Special Agent of the Defense Criminal Investigative Service occurred in North Carolina, and under the United States Constitution and Rule 18 of the Federal Rules of Criminal Procedure, "the government must prosecute an offense in a district where the offense was committed." As to Counts One and Two, Defendant Henson argues that regardless of whether he or Defendant Houston was the first "arrested" or "first brought" to the United States, the District of Maryland is not the proper venue for this case under 18 U.S.C. § 3238. The Government responds that venue is proper in the U.S. District Court for the District of Maryland. The Court agrees with the Government and finds that venue is proper in the District of Maryland.

As discussed above, 18 U.S.C. § 3238 governs venue in this case because it involves offenses that were not committed in any district in the United States. That statute provides that venue "shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought." 18 U.S.C. § 3238. Thus, because the Court has determined that Defendant Houston was first brought to the United States in the District of Maryland, and Defendant Houston is a joint offender in Counts I and II in this case, venue is proper in this District for Counts I and II.

With respect to Count III, the allegation that in April 2009 Henson made materially false statements to a military law enforcement officer, in violation of 18 U.S.C. § 1001, venue is also

6

proper in the District of Maryland. "Federal Rule of Criminal Procedure 18, implementing the[] constitutional [venue] requirements, provides that 'except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed.'" United States v. Cofield, 11 F.3d 413, 416 (4th Cir. 1993) (quoting Fed. R. Crim. Pro. 18). "[W]here Congress is not explicit, 'the locus delicti must be determined from the nature of the crime alleged and the location of the acts or acts constituting it.'" Travis v. United States, 364 U.S. 631, 635, 5 L. Ed. 2d 340, 81 S. Ct. 358 (1961) (citation omitted). The plain language of the statute Henson allegedly violated in this case, 18 U.S.C. § 1001, seeks to protect the executive, legislative, and judicial branches of the federal government from fraud and false statements. Though the false statements were made in North Carolina, the effect of the false statements was to impede a pending judicial proceeding in Maryland. The Government accurately notes that the District Court of Maryland represents the judicial branch of the government in this case, and the military law enforcement agent investigating this case was based in Maryland. Thus, the impact of the alleged false statement was felt in Maryland, and consequently, venue is proper there. Accordingly, the Court will dismiss Henson's motion for a transfer of venue to the Eastern District of North Carolina.

### 4. Defendant Houston's Motions to Suppress

Finally, the Defendant, John Houston, has filed two separate motions to suppress (Motion to Suppress Evidence # 1 (CHU "A-12F")—Doc. No. 71-1 and a corrected Motion, Doc. No. 75-1); and a Motion to Suppress Evidence #2 (Yahoo Records) and Request For Taint Hearing—Doc. No. 73-1).[1]

With respect to the first Motion and Corrected Motion, the Defendant requests that all

---

[1] With respect to Docket No. 73-1 (Motion to Suppress Evidence #2 (Yahoo! Records) and Request for "Taint Hearing"), the Court has scheduled a hearing to consider the Government's taint review process and following that

items seized as a result of the search of a Containerized Housing Unit, "A-12F," located at Camp Victory in Baghdad, Iraq, on or about August 12, 2008 pursuant to a search warrant be seized. Essentially, the Defendant presents two grounds in support of his Motion to suppress evidence seized from (CHU "A-12F"). First, he argues that the affidavits in support of the search warrant lacked probable cause to justify the search because the information set forth in the affidavits failed to link criminal activity to the Defendant's CHU in August as Defendant had left his employment five months earlier, returned to the United States, then came back to Iraq but for a different employer and was residing in a different housing unit and in a different location. Defendant says that there was a significant (5 months) break in location, and in time, and there was no reason for the agents to know that Defendant was coming back nor did the Government possess any reasons to believe that there was contraband located in the Defendant's new housing location. Defendant maintains that the Government was operating on speculation and that the search warrant lacked probable cause to believe that incriminating evidence would be located at that time and place in August of 2008.

As the parties are aware, the Court is required to assess the affidavit in support of a search warrant to determine whether under the totality of circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place. See Illinois v. Gates, 462 U.S. 213 (1983). A search warrant is not to be viewed as a constitutional straight jacket but is to be viewed by the Magistrate and reviewing judge in the context of common sense. The Court has reviewed both sworn affidavits (by special agent Eston J. Presnell III and by ATF special agent Christopher Trainor) and agrees with the Government that together they provide a sufficient basis to believe that the Defendant had smuggled and was prepared to continue his efforts to smuggle weapons into the United States and that under the totality of circumstances

---

hearing the Court will make its findings and determinations relative to the arguments presented in this Motion.

8

there was a sufficient basis and probable cause to believe that evidence of continued criminal activity would be located at the August time period and on the premises where Defendant was then residing. More particularly, the affidavits referred to: emails; admissions, communications and statements by Defendant of what he had done and could do; revelations by two confidential informants as to Defendants' ongoing desires and efforts to smuggle; and the collective training, investigation, and intelligence gathered by the agents. Based upon the totality of circumstances, the Court is satisfied that the affidavits and the reasonable and likely inferences drawn therefrom set forth probable cause to believe that evidence of smuggling would be located at the housing unit then occupied by Defendant. Even had the warrant lacked sufficient probable cause, the Court believes that under United States v. Leon 468 U.S. 897 (1984), the warrant must be upheld under good the faith exception. There is nothing to suggest that the probable cause is based on statements in affidavits that are knowingly or recklessly false; nothing to suggest that the Magistrate failed to perform a "neutral and detached" function and instead rubber stamped the warrant; nothing to indicate that the affidavit(s) did not provide the Magistrate with a substantial basis for determining the existence of probable cause; nor was there any circumstances here to reasonably argue that the warrant was so facially deficient that the executing officer could not reasonably have assumed it was valid. As to Defendant's first argument, the Court concludes that there was probable cause for the issuance of the warrant and that at any rate the affidavits in support of the warrant are entitled to Leon's good faith exception.

    In addition to asserting that the warrant lacked probable cause, Defendant also argues that the seizure by the agents of two empty bottles of Nalbuphine Hydrocholoride, two full bottles of Ketorlac Tremethamine, Lidocaine patches, and an empty prescription bottle of oxycodone, along

with needles and syringes exceeded the scope of the search warrant, were not described nor authorized by the search warrant and, hence, were improperly seized. The Government posits that the seizure was valid under the plain view exception. Under this exception, agents may seize evidence in plain view during a lawful search if (1) the seizing agent is "lawfully present at the place from which the evidence can be plainly viewed"; (2) the seizing agent has "a lawful right of access to the object itself"; and (3) "the object's incriminating character [is]…..immediately apparent." See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Legg, 18 F.3d 240, 242 (4th Circuit 1994); and United States V. Uzenski, 434 F.3d 690, 707 (4th Cir.2006). While the Government argues that the seizure of the drugs and drug paraphernalia and their character were obvious and apparent, the Court would reserve its ruling (on the scope of the search) pending a brief hearing focused solely on the circumstances of the seizure of those items by the seizing agent and whether those circumstances fall within the plain view exception.

   March 16, 2010                                                  /s/
          Date                                                          Alexander Williams, Jr.
                                                                              United States District Judge